# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARTIN NWOGA, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 12-5393 |
| | : | |
| COMMUNITY COUNCIL FOR MENTAL HEALTH & RETARDATION, INC., | : | |
| | : | |
| and | : | |
| | : | |
| COMMUNITY COUNCIL HEALTH SYSTEMS, INC., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**　　　　　　　　　　　　　　　　　　　　February 27, 2013

Presently before the Court is Plaintiff, Martin Nwoga's, Motion to Dismiss Defendants' Amended Counterclaims Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) along with Defendants', Community Council for Mental Health and Retardation and Community Council Health Systems, Inc., Response in Opposition. For the reasons set forth below, Plaintiff's Motion is granted as to counterclaims I, II and III, and denied as to counterclaim IV.

## I.　BACKGROUND

Defendant, Community Council for Mental Health and Retardation, Inc. ("CCMH") is a business entity based in Philadelphia, Pennsylvania, that provides a wide range of emotional and mental health services to the greater Philadelphia community. (Compl. ¶ 7.) Defendant, Community Council Health Systems, Inc. ("CCHS"), is a business entity that runs, manages,

operates, and advertises for CCMH. (Id. ¶ 8.) Plaintiff, Martin Nwoga ("Plaintiff"), is an African male who speaks with a "very apparent accent."[1] (Id. ¶ 11.) Plaintiff possesses a doctorate degree in education. (Id. ¶ 12.) There is disagreement between the parties as to who employed Plaintiff, the job title under which he worked, and the length of his employment. Plaintiff asserts that he was employed by both CCMH and CCHS (collectively "Defendants") as a behavior specialist for approximately five years. (Id. ¶ 14.) Defendants contend that Plaintiff was employed solely by CCMH as a behavioral specialist consultant from July 29, 2009, until July 13, 2010. (Doc. 10 ¶¶ 13, 14.) The parties agree that Plaintiff's primary function was to provide care and diagnostic services for children with mental health concerns. (Compl. ¶ 15.) In July 2010, Plaintiff's employment was terminated. (Id. ¶ 32.)

On September 21, 2012, Plaintiff filed a civil action against Defendants pursuant to 42 U.S.C. § 1981 alleging unlawful retaliation. (Id. ¶ 1.) In this action, Plaintiff alleges that he was fired by Defendants in retaliation for racial discrimination complaints lodged by Plaintiff against various employees of Defendants. (Id.)

On December 20, 2012, Defendants filed an Amended Answer with Affirmative Defenses and Counterclaims against Plaintiff. (Doc. 10.) Specifically, Defendants assert the following Counterclaims under Pennsylvania state law: (I) Fraud; (II) Intentional Fraudulent Misrepresentation; (III) Unjust Enrichment; and (IV) Indemnification. (Id.) As these counterclaims are the focus of this Memorandum Opinion, we will set forth Defendants' allegations in greater detail.

---

[1]Although this fact is not relevant to this Memorandum Opinion, these facts form the basis for Plaintiff's unlawful retaliation claim.

Defendants aver that while employed as a behavior specialist consultant by CCMH from July 29, 2009, until July 13, 2010, Plaintiff provided counseling services to youth clients referred by Community Behavioral Healthcare ("CBH"). (Id. at ¶¶ 51-52.) In this capacity, Plaintiff met and counseled youth clients with behavioral problems at school or at their home in what was referred to as an "encounter." (Id. ¶ 53). At the conclusion of each encounter session, Plaintiff was required to have an encounter form signed by the parent or guardian of the client if the encounter took place at the home, or the teacher or other authorized school personnel if the encounter was at the client's school. (Id. ¶ 55.) These encounter forms were utilized to ensure that services had been provided, and to later be processed by CCMH to secure payment from CBH for services rendered. (Id. ¶ 54.)

Defendants allege that after receiving notification from clients that Plaintiff was not providing the services required by his employment, Defendants undertook an investigation into the matter. (Id. at ¶ 56-61.) Plaintiff refused to cooperate with the investigation. (Id.) Defendants further contend that the investigation revealed that Plaintiff "(a) failed to provide services to certain CBH members as required; (b) requested that parents of CBH members sign blank encounter forms without providing services therefore; and (c) that the Plaintiff submitted false encounter forms to Defendant CCMH and CBH." (Id. ¶ 62.) Finally, Defendants state that due to Plaintiff's false and fraudulent conduct, and his refusal to cooperate with the investigation, Plaintiff was discharged from employment on July 13, 2010. (Id. ¶ 69.)

**Counterclaims I and II: <u>Fraud and Intentional Fraudulent Misrepresentation</u>**

Defendants allege counterclaims against Plaintiff for fraud and intentional fraudulent misrepresentation. Due to Plaintiff's false and fraudulent conduct, Defendants assert that CCMH

3

suffered damages in that: (a) it paid Plaintiff for services he never performed; (b) it suffered injury to its reputation; (c) CCMH had to pay CBH $27,477.60 as a result of the fraudulent encounter forms submitted by Plaintiff for which CBH had paid CCMH. (Id. at ¶ 66, 77.) As a result of Plaintiff's alleged fraud, Defendants seek compensatory and punitive damages along with attorney fees, costs and any other relief this Court deems just and reasonable. (Id. at ¶ 71, 82.)

### Counterclaim III: Unjust Enrichment

Defendants' contention that Plaintiff illegally received benefits from CCMH (i.e. money) for services that were never provided to their clients forms the basis of its counterclaim for unjust enrichment. (Id. ¶ 84.) Specifically, Defendants state that Plaintiff "accepted and retained such benefits under circumstances that it would be inequitable for the Plaintiff to retain such benefit without payment of value back" to Defendants. (Id. ¶ 86.) Accordingly, Defendants demand compensatory and punitive damages along with attorney fees, costs and any other relief this Court deems just and reasonable. (Id. ¶ 86.)

### Counterclaim IV: Indemnification

Due to Plaintiff's conduct, Defendants assert that they were required to reimburse CBH in the amount of $27,477.60. (Id. ¶ 87.) As a result, Defendants seek judgment and indemnification in this amount against Plaintiff. (Id.)

## II. PROCEDURAL HISTORY

On September 21, 2012, Plaintiff filed a federal civil action under 42 U.S.C. § 1981 against Defendants alleging unlawful retaliation. (Id. ¶ 1.) Defendants filed an Answer and Affirmative Defenses to the Complaint and Counterclaims on November 19, 2012. (Doc. 8.)

Plaintiff responded with a Motion to Dismiss Defendants' Counterclaims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 9.) Thereafter, on December 20, 2012, Plaintiff filed an Amended Answer and Affirmative Defenses to the Complaint and Counterclaims. (Doc. 10.) On January 2, 2013, Plaintiff filed a Motion to Dismiss Defendants' Amended Counterclaims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 11.) At this time, we proceed to analyze Plaintiff's Motion.

### III. STANDARDS OF REVIEW

#### A. *Federal Rule of Civil Procedure 12(b)(6)*

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). Pursuant to Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has failed to set forth a claim from which relief may be granted. Fed. R. Civ. P. 12(b)(6); see also Lucas v. City of Philadelphia, No. 11-4376, 2012 WL 1555430, at *2 (E.D. Pa. May 2, 2012) (citing Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005)). In evaluating a motion to dismiss, the court must view any reasonable inferences from the factual allegations in a light most favorable to the plaintiff. Buck v. Hamilton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2002).

The Supreme Court set forth in Twombly, and further defined in Iqbal, a two-part test to determine whether to grant or deny a motion to dismiss. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The United States Court of Appeals for the Third Circuit has noted that these cases signify the progression from liberal pleading requirements to more "exacting scrutiny" of the complaint. Wilson v. City of Philadelphia, 415 Fed. Appx. 434, 436 (3d Cir. 2011).

Initially, the court must ascertain whether the complaint is supported by well-pleaded factual allegations. Iqbal, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Twombly, 550 U.S. at 555. Conclusions of law can serve as the foundation of a complaint, but to survive dismissal they must be supported by factual allegations. Iqbal, 556 U.S. at 679. These factual allegations must be explicated sufficiently to provide a defendant the type of notice that is contemplated by Rule 8. See Fed. R. Civ. P. 8(a)(2) (requiring a short and plain statement of the claim showing that the pleader is entitled to relief); see also Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Where there are well-pleaded facts, courts must assume their truthfulness. Iqbal, 556 U.S. at 679.

Upon a finding of a well-pleaded complaint, the court must then determine whether these allegations "plausibly" give rise to an entitlement to relief. Id. at 679. This is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. Plausibility compels the pleadings to contain enough factual content to allow a court to make "a reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. 544 at 570). This is not a probability requirement; rather plausibility necessitates "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" Id. (quoting Twombly, 550 U.S. at 557). In other words, a complaint must not only allege entitlement to relief, but must demonstrate such entitlement with sufficient facts to nudge the claim "across the line from conceivable to plausible." Id. at 683; see also Holmes v. Gates, 403 Fed. App'x 670, 673 (3d

Cir. 2010).

B.   *Federal Rule of Civil Procedure 12(b)(1)*

Pursuant to Federal Rule of Civil Procedure 12(b)(1), when "considering a motion to dismiss for lack of subject matter jurisdiction, the person asserting jurisdiction bears the burden of showing that the case is properly before the court at all stages of the litigation." Fed. Realty Inv. Trust v. Juniper Props. Group, No. 99-3389, 2000 WL 45996, at *3 (E.D. Pa. Jan. 21, 2000) (citing Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1993)). The district court, when reviewing a motion to dismiss for lack of subject matter jurisdiction, "must accept as true the allegations contained in the plaintiff's complaint, except to the extent federal jurisdiction is dependent on certain facts." Id. (citing Haydo v. Amerikohl Mining, Inc., 830 F.2d 494, 496 (3d Cir. 1987)). The district court is not confined to the face of the pleadings when deciding whether subject matter jurisdiction exists. Id. (citing Armstrong World Indus. v. Adams, 961 F.2d 405, 410 n.10 (3d Cir. 1992)). "In assessing a Rule 12(b)(1) motion, the parties may submit and the court may consider affidavits and other relevant evidence outside of the pleadings." Id. (citing Berardi v. Swanson Mem'l Lodge No. 48 of Fraternal Order of Police, 920 F.2d 198, 200 (3d Cir. 1990)). In the case where the defendant attacks jurisdiction with supporting affidavits, "the plaintiff has the burden of responding to the facts so stated." Id. "A conclusory response or a restatement of the allegations of the complaint is not sufficient." Id. (citing Int'l Ass'n of Machinists & Aerospace Workers v. N.W. Airlines, Inc., 673 F.2d 700, 711 (3d Cir. 1982)).

## IV. DISCUSSION

Before proceeding to examine the validity of Defendants' counterclaims, we must address whether Plaintiff can raise the affirmative defense of statute of limitations outside of his answer. In this case, Plaintiff has not filed an answer, but has instead filed a Motion to Dismiss, which asserts, among other things, a statute of limitations defense. Defendants argue that the statute of limitations defense cannot be raised by Plaintiff pursuant to Federal Rule of Civil Procedure 12 and, therefore, should not be permitted.

Federal Rule of Civil Procedure 8(c) requires a defendant to assert an affirmative defense, such as a statute of limitations defense, in his answer. Fed. R. Civ. P. 8(c). Federal Rule of Civil Procedure 12(b)(6) provides numerous exceptions to this pleading requirement, but noticeably absent from this list are statute of limitations defenses. Fed. R. Civ. P. 12(b)(6) (stating "[e]very defense . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion"). However, the United States Court of Appeals for the Third Circuit ("Third Circuit") views this as a "technicality" and, under the "Third Circuit Rule", allows for a limitations defense to be raised by a motion under Rule 12(b)(6) only if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (quoting Hanna v. U.S. Veterans Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)); see also Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978) (statute of limitations bar must be apparent on the face of the complaint to form the basis for dismissal under Rule 12(b)(6)). The Third Circuit Rule is sensible as it serves not to bypass Rule 8(c), but rather to complement it by requiring that "[a]ffirmative defenses must be raised as early as

8

practicable, not only to avoid prejudice, but also to promote judicial economy." Robinson, 313 F.3d at 137. "If a party has a successful affirmative defense, raising that defense as early as possible, and permitting a court to rule on it, may terminate the proceedings at that point without wasting precious legal and judicial resources." Id.

In this case, we find that Plaintiff's statute of limitations defense is proper under the Third Circuit Rule. Here, Plaintiff has raised the statute of limitations defense at the earliest possible time, thus alleviating any prejudicial concerns to Defendants. Finally, allowing Plaintiff to proceed under the Third Circuit Rule serves to promote judicial efficiency.

We now proceed to analyze Defendants' counterclaims against Plaintiff alleging Fraud (Counterclaim I), Intentional Fraudulent Misrepresentation (Counterclaim II), Unjust Enrichment (Counterclaim III) and Indemnity (Counterclaim IV).

**A.     Counterclaims I and II:  Fraud and Intentional Fraudulent Misrepresentation**

Defendants set forth counterclaims for fraud and intentional fraudulent misrepresentation stemming from the alleged submission of encounter forms by Plaintiff for work that he never completed. Under Pennsylvania law, actions to recover damages for injury to person or property which sound in fraud are governed by a two-year statute of limitations. 42 Pa. C.S. § 5524(7); Toy v. Metro. Life Ins. Co., 863 A.2d 1, 7 (Pa. Super. 2004). The parties are in agreement that this two-year limit applies to these claims, but disagree as to when the period commences running. Typically, the statute of limitations begins to run as soon as the right to institute and maintain a suit arises. Crouse v. Cyclops Indus., 560 Pa. 394, 403 (2000). The question of whether a statute of limitations has run is usually a question for the trial judge, but where the issue involves a factual determination, the determination is for the jury. Farm Credit Leasing

Serv. Corp. v. Ferguson Packaging Machinery, Inc., No. 07-1900, 2007 WL 4276841, at *4 (E.D. Pa. Dec. 3, 2007) (quoting Caleb v. CRST, Inc., 43 F. App'x 513, 516 (3d Cir. 2002)). "Specifically, 'the point at which the complaining party should reasonably be aware that he has suffered an injury is generally an issue of fact to be determined by the jury; only where the facts are so clear that reasonable minds cannot differ may the commencement of the limitations period be determined as a matter of law.'" Id.

Plaintiff contends that the statute of limitations began running on July 13, 2010 - the date when Plaintiff was fired by Defendants for his alleged fraudulent conduct. His argument is logical because Defendants' stated cause for termination was Plaintiff's "repeated fraudulent conduct." (Def.'s Am. Answer ¶ 35.) Defendants argue that their claims sounding in fraud are not precluded by the statute of limitations since all the elements of fraud did not exist until, at the earliest, December 10, 2010. Additionally, Defendants assert that they did not possess "knowledge of the full extent of the fraud, and indeed, the suffering of injury by Defendants, had not yet occurred" on July 13, 2010. (Def.'s Resp. to Pls.' Mot. to Dismiss, 14.)

We are in agreement with Plaintiff that the proper start date for statute of limitations purposes was July 13, 2010. On this date, Defendants admit that they terminated Plaintiff based upon his "repeated fraudulent conduct"; acts for which Defendants could have filed and maintained suit against Plaintiff. (Def.'s Am. Answer ¶ 32-35.) In light of this admission and the clear facts as set forth by both parties, we find that reasonable minds cannot differ and the commencement of the limitations period is determined as a matter of law. However, our inquiry does not end here as there are two possibly applicable exceptions that could act to toll the running of the statute of limitations: the discovery rule and the doctrine of fraudulent

concealment. Fine v. Checcio, 582 Pa. 253, 266 (2005). Defendants contend that each of these exceptions apply in this case.

### 1. The Discovery Rule

The discovery rule applies where, though the right to institute suit has arisen, the party has not, despite the exercise of due diligence, reasonably discovered that they have been injured. Crouse v. Cyclops Indus., 560 Pa. 394, 403 (2000). In such situations, the rule acts to toll the statute of limitations until the party seeking its invocation knows, or in the exercise of reasonable diligence should have known, that they have been injured and that their injury was caused by another's conduct. Id. The party seeking the benefit of the discovery rule bears the burden of establishing their inability to know of the injury despite the exercise of due diligence. Dalrymple v. Brown, 549 Pa. 217, 224 (1997).

In this case, Defendants argue for the discovery rule's application, but are doomed by their own admission that they terminated Plaintiff for his alleged fraudulent actions on July 13, 2010. Thus, on this date, Defendants knew of their injury and the cause of it. Defendants' actions in response (i.e., firing Plaintiff) stand as incontrovertible evidence of their knowledge. As a result, the discovery rule is inapplicable to Defendants' fraud and intentional fraudulent misrepresentation counterclaims.

### 2. Fraudulent Concealment

The doctrine of fraudulent concealment is rooted in a theory of estoppel, and provides that a party "may not invoke the statute of limitations, if through fraud or concealment, he causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts." Krapf v. St. Lukes's Hosp., 4 A.3d 642, 650 (Pa. Super. 2010) (quoting Fine, 582 Pa. at 860). In our case, the

11

burden lies with Defendants to prove fraudulent concealment by "clear, precise, and convincing evidence." Id.

Defendants contend that the doctrine applies because Plaintiff created false encounter forms to conceal the fact that he was failing to serve his clients and then refused to participate in the investigation into his alleged fraudulent conduct. The facts of the case, as admitted by Defendants, belie their claims. First, even if the allegations are true that Plaintiff submitted false encounter forms in lieu of completing his required tasks and refused to cooperate with the subsequent investigation, it is immaterial because Defendants were aware of Plaintiff's alleged fraudulent actions on July 13, 2010. Second, Defendants' contention that Plaintiff's refusal to participate in the investigation constitutes fraudulent concealment is misplaced. For the doctrine of fraudulent concealment to be applicable, the party "must have committed some affirmative independent act of concealment upon which [Defendants] justifiably relied." Krapf, 4 A.3d at 650 (quoting Lange v. Burd, 800 A.2d 336, 339 (Pa. Super. 2002)). "Mere silence in the absence of a duty to speak cannot suffice to prove fraudulent concealment." Id.

Thus, we find that Defendants have failed to carry their burden regarding the discovery rule and the doctrine of fraudulent concealment as both are not applicable to Defendants' counterclaims for fraud and intentional fraudulent misrepresentation. In light of Defendants' counterclaims falling outside the two-year statute of limitations, they are dismissed.

**B.     Counterclaim III: <u>Unjust Enrichment</u>**

Under Pennsylvania law, to set forth a claim for unjust enrichment, a party must allege: (1) the moving party conferred a benefit on the defendant party; (2) the defendant realized that benefit; and (3) the defendant accepted and retained the benefit under circumstances in which it

would be inequitable to retain the benefit without payment of value. Farm Credit Leasing Serv. Corp., 2007 WL 4276841, at *9; Limbach Co., LLC v. City of Phila., 905 A.2d 567, 575 (Pa. Cmwlth. 2006). Plaintiff sets forth several arguments in favor of dismissing Defendants' counterclaims for unjust enrichment. First, Plaintiff contends that the counterclaim is precluded by the statute of limitations. Next, Plaintiff asserts that Defendants have failed to set forth facts that raise a plausible inference that Plaintiff inflicted a legally cognizable harm upon the Defendants. Plaintiff's final argument pertains to whether a valid contract existed between the parties, which would preclude a claim for unjust enrichment.

As a preliminary matter, Plaintiff argues that Defendants' counterclaim for unjust enrichment sounds in fraud and, therefore, must be dismissed as exceeding the two-year applicable statute of limitations for fraud. Plaintiff's argument is misguided. It is clear that Pennsylvania has recognized unjust enrichment as a separate cause of action. 42 Pa. C.S.A. § 5525(a)(4); see also Sevast v. Kakouras, 915 A.2d 1147, 1153 (Pa. 2007). Under Pennsylvania law, claims for unjust enrichment are governed by a four-year statute of limitations. Defendants' unjust enrichment claims fit properly within this time period. Id.; Sevast, 915 A.2d at 1153. However, upon examining the merits of the Defendants' counterclaim, it is apparent that they cannot proceed on an unjust enrichment claim.

It is well settled under Pennsylvania law that a cause of action for unjust enrichment is not proper where there is an express or written contract. See Diener Brick Co. v. Mastro Masonry Contractor, 885 A.2d 1034, 1039 (Pa. Super. 2005); Villoresi v. Femminella, 856 A.2d 78, 84 (Pa. Super. 2004) appeal denied, 582 Pa. 719 (2004); Mitchell v. Moore, 729 A.2d 1200 (Pa. Super. 1999). "Where an express contract already exists to define the parameters of the

13

parties' respective duties, the parties may avail themselves of contract remedies." Villoresi, 856 A.2d at 84. Unjust enrichment exists as an equitable remedy for situations where "no real promises and none of the other elements of a real contract is present." Diener Brick, 885 A.2d at 1039. In this case, though the record does not explicitly set forth evidence of a written contract, we find that it is clear that an express contract existed between Plaintiff and Defendants.[2] An express contract requires offer, acceptance and consideration. Gardiner v. Virgin Islands Water & Power Auth., 145 F.3d 635, 644 (3d Cir. 1998). All of these elements are present in this case. Consequently, Defendants cannot maintain a counterclaim for unjust enrichment. However, Defendants have petitioned this court for leave to amend the pleadings so as to include a counterclaim for breach of contract in the event that a claim for unjust enrichment is improper.

Federal Rule of Civil Procedure 15(a)(2) empowers courts with the discretion to allow a party to amend its pleadings. See Fed. R. Civ. P. 15(a)(2). Where justice requires, courts are urged to freely grant leave to amend. See Id.; Sutton v. New Century Fin. Servs., No. 05-3125, 2006 WL 2676306, at *1 (D. N.J. Dec. 11, 2006) (quoting Dole v. Arco Chemical Co., 921 F.2d 484, 486-87 (3d Cir. 1990) ("leave to amend should be granted freely . . . and court[s] should use 'strong liberality' in considering whether to grant leave to amend")). The Third Circuit has taken a liberal approach in favor of allowing amendment of the pleadings to ensure that "a particular claim will be decided on the merits rather than on technicalities." Dole v. Arco Chemical Co., 921 F.2d 484, 486-87 (3d Cir. 1990); see also Wright, Miller and Kane, Federal Practice and Procedure, Vol. 6, § 1471, at 505 (2d ed. 1990).

---

[2]Black's Law Dictionary defines an express contract as a contract whose terms have been explicitly set out. Black's Law Dictionary (9th ed. 2009).

14

Where there is no evidence of undue delay, bad faith or undue prejudice leave to amend "should be freely given." Tracinda Corp. v. Daimler Chrysler A.G., 200 F. Supp. 2d 439, 443 (D. Del. 2002). With regards to prejudice, the focus is on the hardship to the non-moving party in the form of "additional discovery, costs, and preparation to defend against new facts or new theories." Cureton v. Nat'l Collegiate Athletic Ass'n, 151 F.3d 267, 273 (3d Cir. 2001).

In this case, Defendants' breach of contract claim would not be futile as it fits within the applicable four-year statute of limitations and states a claim for which relief may be granted. In re Merck & Co., 493 F.3d 393, 400 (3d Cir. 2007). Unjust enrichment and breach of contract are theoretically similar claims that will rely on the same factual basis. Thus, allowing Defendants the opportunity to amend the counterclaims to add a breach of contract claim would cause little hardship on Plaintiff. Finally, the record is devoid of any undue delay, bad faith or dilatory motives by the Defendants.

For the aforementioned reasons, Defendants' counterclaim for unjust enrichment is dismissed. Defendants are granted leave to amend to add a counterclaim for breach of contract.

**D.     Counterclaim IV: Indemnity**

Defendants contend that due to Plaintiff's false and fraudulent conduct in receiving payments for work that was not completed, Defendant CCMH was required to repay CBH a total of $27,477.60. Defendants seek indemnification from Plaintiff in this amount. Plaintiff raises three arguments against indemnity. First, Plaintiff asserts that the applicable statute of limitations precludes an action for indemnity. Next, Plaintiff attacks the sufficiency of Defendants' counterclaim. Finally, Plaintiff contends that this Court lacks jurisdiction over the Defendants' counterclaim. We address each argument in turn.

"Due to its contractual nature, a claim for indemnity is governed by the statute of limitations applicable to contract actions." Thermo King Corp. v. Strick Corp., 467 F. Supp. 75, 77 (W.D. Pa. 1979), affirmed, 609 F.2d 503 (3d Cir. 1979). Accordingly, Defendants' indemnity action is subject to a four-year statute of limitations period. See 42 Pa. C.S.A. § 5525; see also Ins. Com'r of State of Connecticut v. Novotny, No. 07-262, 2009 WL 1653553, at *3 (W.D. Pa. June 11, 2009) (four-year statute of limitations period applies to indemnification actions). For statute of limitation purposes, a claim of indemnity originates when "liability is fixed by a judgment against, or payment in settlement by, the indemnitee." Agere Sys., Inc. v. Advanced Envtl. Tech. Corp., 552 F. Supp. 515, 523 (E.D. Pa. 2008) (quoting Thermo King Corp., 467 F. Supp. at 77). In cases of indemnity against loss, the statute begins to run at the time of "actual payment on behalf of the obligation of the indemnitor." Lincoln Gen. Ins. Co. v. Kingsway America Agency, Inc., No. 11-1127, 2013 WL 458449, at *3 (M.D. Pa. Feb. 6, 2013) (quoting Novotny, 2009 WL 1653553, at *3); see also McClure v. Deerland Corp., 585 A.2d 19, 23 (Pa. Super. 1991) ("any action for indemnification before . . . payment . . . is premature"). In this case, Plaintiff argues that since the action "sounds in fraud" that the two-year statute of limitations for fraud should be the applicable time period. Plaintiff's argument is not persuasive. By statutory law, Pennsylvania explicitly provides for indemnity actions, which are subject to a four-year statute of limitations. See 42 Pa. C.S.A. § 5525; see also Novotny, 2009 WL 1653553, at *3.

Here, Defendants seek indemnity from Plaintiff for $27,477.60 stemming from the requirement that Defendants paid back this amount to CBH as a result of Plaintiff's alleged failure to provide the agreed upon services. The Defendants' counterclaim asserts that they paid

16

this amount on January 12, 2011. (Def.'s Am. Answer, ¶ 78.) Thus, this is the date that the statute of limitations began to run. Lincoln Gen. Ins. Co., 2013 WL 458449, at *3; McClure, 585 A.2d at 23. In light of the four-year statute of limitations, Defendants are not prohibited from proceeding on these grounds.[3]

Next, Plaintiff contends that dismissal is warranted because "Defendants have pleaded absolutely no facts in their counterclaim to even suggest or infer that there was a contract for indemnification" between the parties and, therefore, "Defendants have failed to raise a plausible inference that Plaintiff inflicted a legally cognizable harm upon Defendants." (Pl.'s Mot. to Dismiss Defs' Am. Countercl., 14.) Plaintiff's argument is misguided. Indemnity can arise from express contract, implied contract, or by operation of law. Boswell v. Aetna Life Ins. Co., 31 Pa. D. & C.3d 94, 98 (Pa. Commw. Ct. 1984). Black's Law Dictionary defines "operation of law" as "[t]he means by which a right or a liability is created for a party regardless of the party's actual intent." Black's Law Dictionary (9th ed. 2009).[4] In City of Wilkes-Barre v. Kaminski Bros., Inc., 804 A.2d 89 (Pa. Commw. Ct. 2002), the Court asserted that:

> The right to [common law] indemnity arises by operation of law and will be allowed where necessary to prevent an unjust result. It is a common law equitable remedy that shifts the entire responsibility for damages from a party who, without any fault, has been required to pay because of a legal relationship to the party at fault.

---

[3] We note that even if the two-year statute of limitations pertaining to fraud applied, Defendants' counterclaims would be within this period and, therefore, actionable.

[4] For instance, "[i]ndemnity arising by operation of law 'is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable.'" Agere Sys., Inc., 552 F. Supp.2d at 519 (quoting MIIX Ins. Co. v. Epstein, 937 A.2d 469, 472 (Pa. Super. 2007)).

City of Wilkes-Barre, 804 A.2d at 92 (citing 18 P.L.E. Indemnity § 2 (1988)). Thus, there is no requirement that a contract or contractual provision exists that explicitly provides for indemnification because rights and liabilities stemming from indemnity can arise from both statutory and common law. See 42 Pa. C.S.A. § 5525. see also Agere Sys., Inc., 552 F. Supp. at 521 (Pennsylvania recognizes the right to common law indemnity by operation of law); Cambria-Stoltz Enterprises v. TNT Investments, 747 A.2d 947, 952 (Pa. Super. 2000) (finding that the Pennsylvania statute of frauds created a liability for breach of a lease by operation of law regardless of whether parties intended this outcome). It is now necessary to determine whether Defendants' have sufficiently set forth a counterclaim for indemnity.

The Pennsylvania Supreme Court in Builders Supply Co. v. McCabe, 77 A.2d 368, 370, declared:

> The right of indemnity rests upon a difference between the primary and the secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable.

Builders Supply Co., 77 A.2d at 370. Accordingly, to properly establish a claim for indemnity, Defendants must show that: (1) they paid damages to an injured third party; (2) they were obligated to pay the damages to that party; and (3) their culpability was secondary to that of Plaintiff. Id.

In this case, it is undisputed that Defendants paid damages in the amount of $27,477.60 to CBH, a third party. At this early stage in the litigation, it appears that Defendants were obligated

to pay this amount as reimbursement to CBH for the alleged failure by Plaintiff to perform the duties for which Defendants were paid. The absence of a judicial judgment ordering payment is no impediment to Defendants' counterclaim. See Rubin, Quinn, Moss, Heaney & Patterson, P.C. v. Kennel, 832 F. Supp. 922, 932-33 (E.D. Pa. 1993) (holding that as long as payments were made under legal obligation, even if made voluntarily, the right to indemnity is triggered). Finally, it is apparent from the record that Defendants bear no culpability in the alleged misconduct that triggered the legal obligation to pay CBH. As a result, Defendants have, at this early stage in the litigation, satisfied their burden to sufficiently plead a counterclaim for indemnification.

Finally, we address Plaintiff's argument that this Court lacks jurisdiction to hear Defendants' counterclaim for indemnification. It is well settled law that "when a federal court has jurisdiction over the main cause of action, it also has jurisdiction over any proceedings ancillary to that action, regardless of the money involved, the citizenship of the parties, or the existence of a federal question in the ancillary suit." Schwab v. Erie Lackawanna R.R. Co., 438 F.2d 62, 65 (3d Cir. 1971). Because compulsory counterclaims "arise out of the main cause of action, they are ancillary to that action, and if there is federal jurisdiction over the main action, there is jurisdiction over these ancillary claims." Id.; see also Fed. R. Civ. P. 13(a). Here, this Court has jurisdiction over Plaintiff's claims under 42 U.S.C. § 1981 and, as such, Defendants' counterclaims will be included within this jurisdiction if they are found to be compulsory. We find that Defendants' counterclaims are in fact compulsory and, therefore, within the jurisdiction of this Court.

"For a claim to qualify as a compulsory counterclaim, there need not be precise identity of

issues and facts between the claim and the counterclaim; rather, the relevant inquiry is whether the counterclaim 'bears a logical relationship to an opposing party's claim.'" Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc., 292 F.3d 384, 389 (3d Cir. 2002) (quoting Xerox Corp. v. SCM Corp., 576 F.2d 1057, 1059 (3d Cir. 1978)). "[A] logical relationship between claims exists where separate trials on each of the claims would 'involve a substantial duplication of effort and time by the parties and the courts.'" Id. at 389–90 (quoting Xerox, 576 F.2d at 1059). "Such a duplication is likely to occur when claims involve the same factual issues, the same factual and legal issues, or are offshoots of the same basic controversy between parties." Id. at 390. The underlying motivation for the compulsory counterclaim rule is judicial economy. Id. at 389. Here, Defendants' counterclaims arise from the same factual circumstances that frame the Plaintiff's claims. Denying jurisdiction and requiring separate trials would result in "substantial duplication of effort and time by the parties and the courts." Id. at 390. Accordingly, we find that Defendants' counterclaims are compulsory and that judicial economy is best served by permitting them within this action.

## V. CONCLUSION

For the aforementioned reasons, we grant Plaintiff's Motion to Dismiss as to Defendants' counterclaims I (fraud), II (intentional fraudulent misrepresentation) and III (unjust enrichment), and deny Plaintiff's Motion to Dismiss counterclaim IV (indemnity). Further, we grant Defendants leave to amend their filings to add a counterclaim for breach of contract.

An appropriate Order follows.